Good morning. May it please the Court, the first item of business I'd like to address is the Court's June 28th order where you set forth two issues of great importance. If you would, we're very interested in trying to determine whether or not we have jurisdiction to proceed any further. Yes, yes. And I kind of, I recasted the way they were put in the order to kind of make them a little bit easier to address. Issue number one, does this Court's in-bank decision in WMX Technologies v. Miller preclude the Court from exercising jurisdiction under 28 U.S.C. 1292a1? That's the first question. The short answer is no, this Court does have jurisdiction. The issue number two is, do a penalty... Why don't you give us the long answer? Yeah. Do you want me to do them like that? Yeah. Okay. Why? I'll go right to it. There's very good reasons. I'll start with the least of the good reasons first, Your Honors. If you look at the Court's docket, what you will notice is on September 2nd, docket entry number seven, the first order of this Court, it indicates the appeal filed August 30th, 2010 is a preliminary injunction appeal. Accordingly, Rule, Ninth Circuit Rule 3-3 shall apply, and of course that's the expedited briefing. Then on September 23rd, in docket entry number 12, another order was issued wherein it indicated once again this is a preliminary injunction appeal. Well, let's assume we were wrong. Okay. I mean, the Court has a continuing obligation to determine whether or not it has jurisdiction. If we misdocketed a case because we thought it was one thing but it turns out to be something else and we do not, in fact, have jurisdiction, we still have an obligation sui sponte to dismiss, do we not? Yes, you do, Your Honor. Okay. I will address... So without regard to how the Clerk's Office docketed this appeal, why don't you go to the merits of the first question? I will. The Court cites WMX Technologies v. Miller. That case cited three other cases. It cited the U.S. Supreme Court decision in Jung v. K and D mining as well as two Ninth Circuit cases, Proud and Lopez, and I'm sure... Look, WMX tried to make it very clear in light of unclear Ninth Circuit law that you must get an order from the district court. You can't just say, oh, well, leave them and we're going to appeal directly. Tried to leave not too many holes in that determination. Might have failed. Language has its limits. But that was the attempt. It seems your argument here is, well, we don't have to amend because there was a preliminary injunction request, which sounds a little bit peculiar, since the district court didn't really address the preliminary injunction, couldn't address it because it found you had no spending. Well, to that, Your Honor, I would say this. The cases cited by WMX, all three cases, Jung, Proud, and Lopez, dealt strictly with Rule 12b motions only. There was not a request for a preliminary injunction in any of those cases, including the WMX case. That is a distinguishing factor. So your theory would be that in any case, any case we file, we can tack on the thing that says, and we'd like a preliminary injunction, Judge, and then it doesn't matter if you have, Judge, had your addiction. Nothing matters. Once he says, nope, you get an appeal immediately. You don't have to amend. Even if you could amend very simply, you don't have to do that. You just appeal because you tacked on this request for a preliminary injunction. Is that right? That's your position. I take it. Well, I think it's 1292A1's position, Your Honor. I believe that that is the purpose of 1292A1 is for interlocutory appeals such as a preliminary injunction. 12b-6, it really comes under 1291, where you need the final judgment piece of paper being filed. Now, just to go back just a second, prior to the hearing on the motion for preliminary injunction and the motion to dismiss under 12b, there was a TRO request, which was denied by the court, indicating that, well, the TRO request can wait until we have the hearing on the preliminary injunction and the motion to dismiss. But you can't take an appeal from a denial of a TRO. No, of course not. That's not really what my – I'm addressing Judge Fernandez's question as to whether it was just simply, oh, by the way, we're going to request a preliminary injunction just for the sake of not having to have a judgment entered. And the answer is no, because it was a very serious request, because we asked for a temporary restraining order first. Same time we filed the TRO request, we filed our preliminary injunction request. Therefore, we were very serious about declaratory relief and injunctive relief. But I have something that's even more stronger than that, and that is – I do appreciate the court, because it made me think about a lot of other things, one of which was trying to find another case to kind of clear this up. And there is, and I gave it to the clerk. There is a U.S. Supreme Court case by the name of – let me pull it out here. Hold on one second. And it's Bankers Trust Company v. Amalis. It's a 1978 case, Your Honors. It was decided 20 years after the Jung case, which is the case that's a predicate for the WMX case. Now, in that case, there was a dismissal, and the judgment was never filed by the district court. And much like this court, the Second Circuit in that case noticed it. They said, oh, by the way, where is the judgment in the case? And the court, notwithstanding that fact, said, you know, under Rule 58, there really should have been a piece of paper filed that said the judgment. However, the parties have been proceeding under dismissal, and here we are. And they said, well, we're going to proceed. This was in conflict with a couple other circuits, so the Supreme Court granted certiorari and took the case. When they took the case, they said, we agree with the Second Circuit's approach to this final judgment piece of paper having been filed as a predicate to the 1291 jurisdictional question. And they said, we conclude that the court of appeals for the Second Circuit was correct in deciding that it had jurisdiction in this case despite the absence of a separate judgment. That's at page 383. Was that a case where the district court had given leave to amend? No. Okay. Oh, wait. Let me think for a second. And they just ignored doing that? You know what? I think what happened is there were the answer to the question is this part of the procedural saying the answer is no. They did not. There was not an issue of that pending with the court. Maybe you want to take up your second issue? I wanted to read something that they wrote in that opinion because I think it's pretty important. You've got three minutes, so use your time any way you want. Okay. As to the issue number two, which is do appellants have Article III standing to prosecute this prejudgment, facial challenge to the individual mandate, in particular, a discourse decision in Thomas versus Anchorage Equal Rights? Again, in that we rely upon, once again, Supreme Court decision in Lujan having to do with the elements. Is there injury? Is there causation? Is it redressable if the court were to agree with you? As far as items or elements two and three, the causation, of course, the act precipitated the plaintiff's gravamen in their complaint of what they're complaining about here. In other words, the individual mandate is unconstitutional. The redressability, of course, if the court were to agree with us, find 1292A1 has been satisfied and strikes down the individual mandate, then the grievance that they have been pursuing would be redressed. So the issue, of course, is the issue of injury. Your objection to the individual mandate, however, is just a generalized grievance shared by all sorts of people and doesn't show any particularized injury to your client. It does, Your Honor. Let me see if I can answer it like this. If you look at the act, if you look at the congressional findings, which is a 1501A2, where it has a whole long list of supporting the substantial impact on interstate commerce. I talks about the question of preexisting conditions. And what they talk about is they explain how the preexisting conditions, which is now in effect, is being underwritten by the original man or the individual mandate. So to answer your question, Judge Reimer, I would answer it like this. Since the underwriting is presently happening, that is in effect right now, the preexisting condition, in the future, the individual mandate will make those individuals pay for that particular amount of money that's being underwritten now. So therefore, not only would Mr. Baldwin have a claim in the future when it went into effect in 2014, our position is that presently the individual mandate is affecting him by way of this underwriting that is occurring. So there could be actual injury when you look at the tying the individual mandate with the preexisting condition section of the act. So we have present injury occurring, and there's no question that... Where can we find any reference to that in the record? I'm not talking about the statute. I'm sorry? Where can we find any reference to this preexisting condition thing in the record? Other than the act has been cited in our briefs? I know what the act says. Yes. For example, we don't even know whether Mr. Baldwin has insurance or not, or whether he's going to refuse to buy insurance. There's nothing in the complaint that even addresses that. That's a great question. And the reason we're... I'm trying to focus on this, and it keeps on eluding me, this whole concept. But the reason is this. Until this case, we have never seen a statute like this where it's hard to get your arms around it because typically what happens is there's a statute out there that has a negative prohibition. It says you cannot do A, B, C, or D. We can't even get to that by the plaintiff saying, you know, when the individual mandate comes into effect in 2014, I'm going to violate it by doing A, B, or C. That's not how this statute works. It's the complete opposite. Mr. Baldwin... But he might be in compliance. I mean, the problem, counsel, is it's totally hypothetical at this point. We can't tell from what is before us what his current status is or what it might be down the road. It may very well be that he has a policy that is fully enforced that covers him now, which will be in effect at the time the act takes place, and he'll be in full compliance with the law. But we can't find an answer to that question in the record as you framed it for us. In the Thomas Moore case, the justices talk about that, whether they have insurance. They say it's of no consequence. It makes no difference. And the reason it doesn't make difference goes back to this idea that we have a statute that is compelling someone to do something. So there isn't anything right now that is relevant for the purpose of standing or even deciding the constitutionality of the individual mandate that Mr. Baldwin has to do. He doesn't have to do anything now. And once 2014 comes around, he doesn't have to do anything now. The statute is unique. It's the first statute in the history of, as far as I know, commerce clause jurisprudence where they are telling an individual to do something. But the unusualness of the statute and the fact that it compels you to do something doesn't write off standing from the book and the need to show injury in fact now. Because now is when you've brought the lawsuit. Correct. And, again, look at it from this way. Again, I'm going to the other cases out of Florida. Look at the impact that this Florida case is having on the Ninth Circuit. Well, it doesn't have any at all now because it stayed. Well, that's true, but sooner or later we're going to find out if it's going to go into effect. And that doesn't have any effect on you, as far as we can tell, regardless. Okay. That's all I can let you run over, about three minutes. Let's hear from the government. Thank you, Your Honor. Thank you. May it please the Court. Beth Brinkman on behalf of the federal defendants and with me at counsel table is Samantha Heifetz. We believe that the Court of Appeals has jurisdiction over the preliminary injunction and should affirm the denial of the preliminary injunction for lack of standing. We believe that the text of 1292A1 indicates that the Court has jurisdiction over this interlocutory order that refused an injunction. We appreciate the Court's bringing WMX to our attention. We apologize for not having been aware of that. As that opinion points out, there are different practices and different circuits about whether one can stand on a judgment or not when there is a leave to amend. We believe that case goes to finality, and so we would urge that the Court affirm the denial of the preliminary injunction and then be remanded and the Court's ruling on standing would then govern the District Court's ruling on standing for the motion to dismiss as well. Here's the problem. What the District Court did, it didn't just deny a preliminary injunction. It said, no jurisdiction, so basically I can't do anything. That's the end of the case, but I'll let you amend to show we have jurisdiction. It's a little bit peculiar to say, well, that's a denial of a preliminary injunction. The Court could not do anything once it said it didn't have jurisdiction. It couldn't do anything, and when it didn't have jurisdiction, they could either put in something to show it had jurisdiction or forget it. Or ask the District Judge, issue your order that says you don't have jurisdiction, and we'll appeal that, and that would be an appeal from a final judgment. That's it. I think under the 1292A1, though, it doesn't have to be an appeal from a final judgment. That isn't a statute for appeal from an interlocutory judgment. Of course it doesn't. That's the point of it. I guess I'm having a hard time following the logic of your argument here. If a court dismisses a case because it finds it has no jurisdiction, then it has not entered a decision with regard to either the grant or the denial of a preliminary injunction. It is simply wiping the case off its docket by saying, I don't have the power to do anything with this dispute. I don't even see that as the denial of a preliminary injunction. Well, in this case, the preliminary injunction was briefed to the district court, and the district court did enter a ruling on the preliminary injunction saying there was no standing. That's a judgment, an interlocutory judgment under WMF. I think if this were in the Supreme Court, the Supreme Court would say it was improvidently granted because once the district court realized that it had no jurisdiction, why wouldn't the dismissal on jurisdictional grounds, in effect, invalidate any prior orders that had been entered with regard to any kind of interim relief? Under WMF, Your Honor? Yes. I guess I would point to the statutory language justifying the interlocutory appeal of a court's denial of a preliminary injunction. The text of that statute is not limited to judgments that reach the merits or the balance and all of that. We think if you don't agree on standing, it would go back to the district court to address those factors, but here where there is an interlocutory ruling denying an injunction, we think under the text of that statute, the court would have jurisdiction. I see how it's hard to reconcile with the rationale in WMX, but I think the rationale in WMX is that if there's a motion to dismiss granted with leave to amend, in order to provide adequate notice and certainty, there has to be either the amendment or an extra stop of a judgment. I think that could be interpreted differently for the interlocutory appeal for the preliminary injunction under the statute. Let me ask a hypothetical, Ms. Brinkman. Suppose that the district court had entered a preliminary injunction and then subsequently dismissed the action for lack of jurisdiction, and then the defendant or whoever's restraining violated the terms of the preliminary injunction. Would the government's position be that we could hold the contemnor in contempt for violating a preliminary injunction issued by a court that had no jurisdiction over the subject matter of the action? I think the party would have gone in and asked for the preliminary injunction to be vacated as moot in that situation. And why doesn't the dismissal in effect moot the prior order addressing the preliminary injunction question as soon as it's entered, dismissing the action? I think that the preliminary injunction is an interlocutory appeal. It's a very extraordinary remedy, as the Court well knows. And that's why we think that even if there were stand- Counsel, if the Court has no power to do anything in a case, there's nothing left once the Court dismisses the action for lack of subject matter jurisdiction. I would take this position, Your Honor. We think that the text of 1292a1 does support appellate jurisdiction over the preliminary injunction. And so our first position would be to affirm the denial of the PA for lack of standing. However, the Court, and then it would be remanded to the district court under WMX, and we think that that standing, lack of standing ruling, would govern there also. If the Court, however, believes that even the preliminary injunction should be remanded under an application of WMX to the PI, we would not object to that, but we think that we just have a cautionary, I think, view because of the text of 1292a1 suggesting that there is jurisdiction. The argument you're making sounds like a district court always has jurisdiction whenever a party asks for injunctive relief. Injunctive relief, as I understand it, is nothing more than an equitable remedy that a court has as one of the weapons in its arsenal, assuming that it has jurisdiction over the subject matter that the injunctive relief is being sought in. You can't just go into court and say, I want an injunction to make all the traffic signals green on Orange Grove Boulevard for five minutes and confer jurisdiction on a district court. Absolutely. We couldn't agree with you more, Your Honor, and we think there is no standing here. If I could just turn to that for a moment, I think that the questions by both yourself and Judge Reimer have really brought to the fore the points I had intended to make. The allegations here are quintessential generalized grievances. They are policy disagreements with the act of Congress that do not constitute injury. They cannot support Article III jurisdiction or a finding of a case or controversy. And also, as Your Honor pointed out, there is no injury in fact shown particularly by Mr. Baldwin. There's no allegation he does not have insurance, and if he had insurance there would be no allegation that he would cancel insurance but for. There's no causation between the statute that he is challenging and any adverse consequences or change in conduct. He points out that there's a certainty that the law will go into effect in 2014, but that's not the test is whether or not there is a certainly impending injury to him when the law goes into effect. And he has fallen very, very far from showing that in this case. And I would also point out that it is in a situation where no one will have standing to challenge the statute. There are other cases proceeding where plaintiffs have made showings, and it goes to some of the questions Your Honor brought up about Judge Tallman about satisfying it. Clearly, if Mr. Baldwin has insurance, it satisfies the minimum coverage provision and will do so in 2014. And in the D.C. District Court, for example, the lead plaintiff was dismissed there because she qualified for Medicare. That also would satisfy the minimum coverage provision. So it has to be allegations that demonstrate that there's in the district courts where they found standing has been a current effect because people are in such economic situations that they have to change their current spending or savings in order to be able to comply with the law when it goes into effect. So if, in fact, Mr. Baldwin does not have insurance, or if, in fact, Pacific has more than 50 employees and such, all they needed to do was amend their complaint to so state and they'd be off and running. That would not be all they'd have to allege, Your Honor. In addition to alleging they have insurance, there would have to be some current impact that they would have to be changing their economic situation now. And some plaintiffs have been able to show that because they have small businesses and there's an economic impact now that they can't enter into, for example, a five-year loan for an automobile because of their economic consequences. But it's not just anyone who doesn't have insurance. They have to show some kind of current impact on their conduct that they have to change in order to be able to comply when the law does go into effect. The other point I would just want to make also is about the Pacific Justice Institute. And Your Honor mentioned the 50 employees. That certainly is a required allegation to challenge the employer responsibility provisions. In fact, the Pacific Justice Institute doesn't really make any allegations about harm from the minimum coverage provision. And appellants are very clear in their brief on page 8 and footnote 9 that the only issue that they have brought on appeal is that minimum coverage provision. And, frankly, the allegations that the Pacific Justice Institute does raise really rest on a misunderstanding of the statute of part-time employees. There is not a requirement that insurance be provided. They're actually counted when you determine whether or not there's 50 full-time employees, the number of hours. But in order for any kind of tax penalty imposed on an employer, it has to be a full-time employee who goes to an exchange and uses a tax credit. It's a complicated penalty, but it doesn't apply when it's a part-time employee. So we still have to know whether or not they're first big enough to be subject to the obligations under the Act. Is that what you're saying? What I'm saying is that those provisions aren't even on appeal here. No, I don't think you're – maybe I didn't make my question very clear. Even if they were big enough. Even if they had 50 employees. But we don't know that. And so we don't even know whether the Act would or would not apply to them on the basis of their allegations today. Right. And we do know that the only part of the Act that's on appeal here is the minimum coverage provision, and that doesn't act against employers. There's no injury. The only injury – Well, my understanding of their concern is, assuming for the sake of my question that they are large enough, what they're saying is we object to having to provide insurance for part-time employees, right? Yes, but that's not the minimum coverage provision that they're challenging. No, I understand that. But first we need to know if they're big enough to even be subject to the Act, and we don't know that. No, Your Honor. And, in fact, public information suggests that it's a large organization of volunteer attorneys, and there are only four staff attorneys. So, yes, I think that also is a threshold question for anything. And as Your Honor pointed out, in addition to be able to – going back to the individual to satisfy, there are also various exemptions that would apply. So we would urge that the court affirm the denial of the preliminary injunction and remand to the district for lack of standing, and remand to the district court, which would then be governed by that lack of standing. And I should point out, and I'm sure the court is well aware from the record, that the district court did allow an opportunity to amend the complaint. That was due by September 10th of last year, and the appellant was on full notice of the grounds, the absence, what was lacking in their allegations, both from our briefing and from the district court ruling. So we think at this juncture, if there were some kind of further effort to amend, there may be a need for discovery having to do with the jurisdictional issues because those allegations have not been made thus far. Thank you very much, Ms. Braco. Thank you, Your Honor. Mr. is it Lepeskopo? Lepeskopo. You're out of time, but I'm going to give you a couple of minutes because it's an important case. And can you tell us why didn't you amend your complaint? Because, well, again, it goes back to this thing that keeps on alluding everyone, including myself. I'm not trying to put myself like I know the answer because I don't. Here's why this is different and why we're having a problem with this. This is the first time we've had a statute under the Commerce Clause where an individual is being commanded to do something on the pain of an imposition. Let me ask the question more simply. It's a very simple question. Why did you not amend your complaint to tell us whether or not Mr. Baldwin has insurance and whether or not the Pacific Justice Institute is large enough with enough employees to come within the definition of coverage under the act? I didn't because I don't think it's relevant to the whole concept. So you know the answer, but you don't want to tell the court, even though the court gave you leave to amend your complaint so that you could save the complaint for dismissal for lack of jurisdiction. Your Honor, our position is that if, putting aside the motion to dismiss for a second, if there were no motion to dismiss and the court still would have addressed the standing question in the context of the preliminary injunction motion, so the same result would have most likely have happened. Don't talk to me about preliminary injunctions. I just want to know why you didn't amend your complaint when the court said, here's the deficiency in your complaint. I'm dismissing with leave to amend. It's basically an invitation. Answer my questions to show that I have jurisdiction, and I'll be happy to find that I have jurisdiction and entertain your lawsuit. But you don't want to answer the court's question. No, it's not so much that I want to answer. I don't agree with the premise that the allegations were not enough. If you are – Well, then you're standing on your complaint is what I hear you saying. Well, I'm standing on the declarations also. I mean, it was not just a complaint with allegations. So we're going to have to decide this appeal solely on the basis of the record as you created it in the district court before it was dismissed. Correct. Okay. And they're the same. And if I could just – You've answered all the questions I have, unless Judge Fernandez or Judge Reimer have any other questions, you're out of time. Thank you. The case just argued is submitted, and we'll get you an answer as soon as we can.
judges: Fernandez, Rymer, Tallman, Cjj